AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Southern District of Ohio

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>TextMe account user ID of 236977084, user name<br>"744626cggt0924" and telephone number (513)<br>725-9361 | )<br>)<br>)<br>)<br>)<br>)<br>)    Case No. **1:23-MJ-00383** |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____Southern_____ District of _____Ohio_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2422(b) | Coercion and Enticement |
| 18 U.S.C. §§ 1591 & 1594 | Sex Trafficking of Children & Attempt/Conspiracy |

The application is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Nathan Holbrook*

*Applicant's signature*

Nathan Holbrook, Special Agent FBI

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____FaceTime video conference_____ *(specify reliable electronic means)*.

Date: **May 5, 2023**

*Stephanie K. Bowman*

*Judge's signature*

City and state: Cincinnati, Ohio

Stephanie K. Bowman, United States Magistrate Judge

*Printed name and title*

**Attachment A**

This warrant applies to information associated with the TextMe account user ID of 236977084, user name "744626cggt0924" and telephone number (513) 725-9361 **(TARGETACCOUNT)** that are stored at premises controlled by TextMe Inc., an electronic communications service provider headquartered at 275 Post Street, Suite 500, San Francisco, CA 94108.

**Attachment B**

I.      **Information to be disclosed by TextMe, Inc.**

To the extent that the information described in Attachment A is within the possession, custody, or control of TextMe, Inc. including any messages records, files, logs, or information that have been deleted but are still available to TextMe, Inc., or have been preserved pursuant to a request made under Title 18 U.S.C. § 2703 (f), TextMe, Inc. is required to disclose the following information to the government for the account listed in Attachment A:

     a.    All contact and personal identifying information for TextMe account user ID of 236977084, user name "744626cggt0924" and telephone number (513) 725-9361 **(TARGET ACCOUNT)** to include but not limited to full name, user identification number, date of birth, gender, contact e-mail, addresses, physical address (including city, state and zip code), telephone numbers, screen names, websites, and other personal identifiers;

     b.    All activity logs for the TARGET ACCOUNT;

     c.    ALL content of text messages sent and received;

     d.    All photos and videos uploaded by the TARGET ACCOUNT and all photos and videos uploaded by any users to the TARGET ACCOUNT, to include metadata associated with those photos and videos;

     e.    All records or other information regarding the identification of the devices and internet browsers associated with, or used in connection with, the TARGET ACCOUNT, including the hardware model, operating system version, unique device identifiers, mobile network information, and user agent string;

     f.    All information generated or received by the TARGET ACCOUNT, including any postings, status updates, comments, networks or groups of which the user is a member, and information about the user's access and use of the TextMe application;

g.  All other records and contents of communications and messages made or received by the users, including all public chat messages, private chat messages, group chat messages, chat history, video and voice calling history, and contact lists;

h.  All IP logs, including all records of the IP addresses that logged into the TARGET ACCOUNT;

i.  All records of searches performed by the TARGET ACCOUNT;

j.  The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

k.  All records pertaining to communications between the TARGET ACCOUNT and any other person regarding the ability to use and access TextMe, including contacts with TextMe, Inc. support services and records of actions taken;

l.  Any original metadata or file information still maintained by TextMe, Inc. associated with media content sent to or from the user's TextMe account;

m.  Any cookies, web beacons, advertising IDs, and push tokens, associated with the TARGET ACCOUNT; and

n.  The data listed above in paragraphs A through M shall be produced by TextMe, Inc. regardless of where it may be stored.

II.  **Information to be seized by the government**

a.  All information described above in Section I that constitutes fruits, evidence, and instrumentalities of violations of 18 U.S.C. §§ 1591 & 1594(Sex Trafficking of Children to include attempting and conspiring) & 18 U.S.C. § 2422(b) (Coercion & Enticement for Illegal Sexual Activity) including the following: all files, documents, communications, images, videos, contacts, metadata, and logs associated with the TARGET ACCOUNT related to minors engaging in prostitution, sexual activity or sexually explicit conduct, along with any evidence that would tend to show the true identities of the persons committing these offenses.

b.   All activity and IP logs, including all records of the IP addresses that logged into the account;

c.   All account information, including all registration, identity and contact information, including full name, e-mail address, physical address (including city, state, and zip code), date of birth, gender, hometown, occupation, and other personal identifiers:

d.   The length of service (including start date), the types of service utilized by the user, and the means and source of any payments associated with the service (including any credit card or bank account number);

e.   All privacy settings and other account settings;

f.   All registered devices and accompanying serial numbers and other identifying numbers to include dates or activation, registration, deactivation;

g.   All records pertaining to communications between TextMe, Inc. and any person regarding the user or the user's TextMe account, including contacts with support services and records of actions taken;

h.   All records that may identify co-conspirators, aiders, abettors, or any other individuals involved in the crime under investigation, including records that may help reveal their true identity and whereabouts; and

i.   All records that may identify any victims or individuals who sought prostitution in the crimes under investigation.

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit is support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant for information associated with account user ID of 236977084, user name "744626cggt0924" and telephone number (513) 725-9361, that is stored at premises controlled by TextMe, Inc., an electronic communications service provider headquartered at 275 Post Street, Suite 500, San Francisco, CA 94108. The information and account to be searched are further described in Attachments A ("TARGET ACCOUNT") and B.

2. I am a Special Agent with the Federal Bureau of Investigation and have been since February 13, 2011. In July 2011, I was assigned to the Indianapolis Division, Merrillville Resident Agency to work white collar crimes and public corruption investigations. In joining the FBI as a Special Agent, I initially spent five months at the FBI training academy in Quantico, Virginia, where I studied numerous investigative techniques, including those involved in white collar/public corruption investigations.

3. I was a member of the Northwest Indiana Public Corruption Task Force from August 2011 until December 2017. This task force focused on public corruption investigations throughout Northwest Indiana and was comprised of several federal law enforcement agencies, including the FBI and the Internal Revenue Service (IRS). As part of my duties while a member of this task force, I was involved in numerous public corruption investigations including investigations of elected public officials, non-elected government employees, and corrupt law enforcement officers. In the course of these investigations, and through my involvement in other investigations with other experienced white collar/public corruption investigators, I have participated in white

collar and/or public corruption investigations involving the use of Title III communication intercepts, confidential surreptitious undercover recordings, electronic tracking devices, pen registers and trap and trace devices, and various types of search warrants for GPS location information, government offices, and government computer systems.

4. In January of 2018, I was transferred to the Cincinnati Division of the FBI and assigned to a white collar/public corruption unit, specifically to investigate public corruption in Southern Ohio to include bribery, extortion, and theft of funds from programs receiving government money. Since my assignment to the Cincinnati Division, I have conducted or participated in public corruption investigations utilizing advanced techniques to include the use of: Undercover Agents; confidential human sources; consensual undercover recordings; Title III communication intercepts; physical surveillance; pen registers and trap and trace devices; and the analysis of financial records.

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, witnesses, and agencies. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant. It does not set forth all of my knowledge, or the knowledge of others, about this matter.

6. Based on my training and experience and the facts as set forth in this affidavit, there probably cause to believe that evidence of violations of Title 18 U.S.C. §§ 1591 & 1594 (Sex Trafficking of Children to include attempting and conspiring) & Title 18 U.S.C. § 2422(b) (Coercion & Enticement for Illegal Sexual Activity), will be found in the TARGET ACCOUNT. There is also probable cause to search the TARGET ACCOUNT

described in Attachment A for evidence, instrumentalities, contraband, and/or fruits of these crimes further described in Attachment B.

## JURISDICTION

7. This court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States…that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## BACKGROUND ON TEXTME, INC

8. According to TextMe, Inc website at textmeinc.com, TextMe, Inc provides a variety of internet application services that enable communications services, including text messaging, inbound calling, outbound calling, and associated websites and mobile applications. Mobile applications offered by TextMe, Inc operate under the names of TextMe, FreeTone, and TextMeUp. The applications are downloadable to mobile devices such as Apple's iPhone, iPod, iPad and Android and other smartphones and tablets, such as Kindle.

9. TextMe offers the following services:

    a. Inbound calling service (Inbound Service) assigns users a phone number that allows the user to receive incoming phone calls from the public switch telephone network and also allows the user to receive calls from other users of TextMe, Inc products and services. The Inbound Service may be subscribed to and used independently of the Outbound Service. In order to access the Inbound Service, the user will need a network connection of at least 64 kbps, but a broadband internet access connection is not required.

      b. Outbound calling service (Outbound Service) enables users to place calls to other users TextMe, Inc products and services as well as place calls to the public switched telephone network. The Outbound Service may be subscribed to and used independently from the Inbound Service. In order to access the Inbound Service, the user will need a network connection of at least 64 kbps, but a broadband internet access connection is not required.

      c. Users can elect to subscribe to both the Inbound Service and Outbound Service.

      d. The Text Messaging Service (Texting Service) allows users to send and receive a text message, short message service (SMS) and multimedia message services (MMS).

      e. In-app Communication Service (In-app Service) allows users to send and receive messages and calls with other users of TextMe, Inc's products and services.

10. In order to provide users with TextMe,'s products and services, TextMe must collect and process information about the user. When using TextMe products and services, the user consents to the collection, storage, processing, sharing, transfer, manipulation, and disclosure of the information as described below.

      a. TextMe collects identifying information to include the user's real name, email address, account name, and age bracket. TextMe associates the identifying information provided by the user with the identifying information TextMe collects about the user including the account number assigned to the user's account, the internet protocol (IP) address you use to access our products and services, the telephone number we assign to your account, the advertising identifier and device

identifier associated with the device you use to access TexMe's products and services.

b.  TextMe will maintain a record of the usage of TextMe's products and services, including details about when the user logged in and what actions the user performed in TextMe products and services, such as logs of messages and calls sent and received, and including records of what purchases the user made, if any.

c.  TextMe collects information about how the user accesses TextMe products and services electronically, including device make and model, device settings, operating system, type of connection, carrier information, applications on your device, browser information.

d.  TextMe collects information about how users access the products and services electronically, including device make and model, device settings, operating system, type of connection, carrier information, applications on your device, browser information.

e.  If the user provided authorized access to the device's location services, TextMe will collect the user's location.  If the user has not authorized access to the device's location services, TextMe will be able to infer your location via the IP address used to connect to our products and services.

11. Based on the information obtained from the TextMe website, the TextMe servers are likely to contain all the material just described, including stored electronic communications and information concerning subscribers and their use of TextMe, such as account access information, transaction information, and account application.

**<u>PROBABLE CAUSE</u>**

12. In March of 2023, Investigators were told by the Anti-Human Trafficking Coordinator with the Hamilton County Juvenile Court, that two minor females had been screened as possible sex trafficking victims.

13. On March 16, 2023, Minor Victim 1 (hereafter referred to as MV1), date of birth XX/XX/2008, was interviewed by a forensic interviewer at Cincinnati Children's Hospital. MV1 was at a group home named Hope Haven for girls located in Dayton, Ohio. While at Hope Haven, MV1 met Minor Victim 2 (hereafter referred to as MV2), date of birth XX/XX/2008. On approximately February 28, 2023, MV1 and MV2 ran away from Hope Haven. MV2 told MV1 they were just going around the block to smoke marijuana with a friend of MV1's, referred to as "Scorpio." MV1 and MV2 ran away from Hope Haven for about two blocks and waited approximately 15 minutes, but Scorpio did not arrive. They walked back to Hope Haven and MV2 knocked on her roommate's window for the purpose of having the roommate log onto Facebook to contact Scorpio. At approximately the same time, Scorpio drove by, eventually stopping and picking up MV1 and MV2. MV1 described Scorpio's vehicle as a tan or silver color sport utility vehicle. MV1 described Scorpio as a dark-skinned male with very short hair. He had a scorpion tattoo on his face with a piercing at the point of the scorpion tail. Scorpio drove MV1 and MV2 to an apartment complex in Cincinnati located at 1828 Sunset Avenue.

14. On March 22, 2023, investigators conducted surveillance in the area of 1828 Sunset Avenue, Cincinnati, Ohio and observed a large Infiniti SUV that fit the description of the vehicle Scorpio used to pick up MV1 and MV2. The vehicle had an Ohio license plate PLJ1198. The license plate number was searched in a police database and found to be

associated with a 2009 Infiniti SUV and registered to Scorpio's One Stop Shop, LLC, 9125 Winston Road, Apartment 13, Cincinnati, Ohio.  A search of the Ohio Secretary of State Business Search website showed Scorpio's One Stop Shop, LLC is registered to Kelly Richards (hereafter referred to as "Richards"), PO Box 428786, Blue Ash, Ohio, 45242.  Investigators obtained a Bureau of Motor Vehicle's photograph of Richards. Richards fit the description provided by MV1 to include the scorpion tattoo on his face.

15. Once inside Richards' apartment, MV1 was offered a plate that contained cocaine and she did a line.  MV1 said she was scared because she did not know where she was or what was going to happen to her.  Richards received a phone call from an individual MV1 referred to as "Bear."  Shortly after, Bear comes to Richards' apartment.  MV1 observed Richards sell cocaine to Bear.  Richards also retrieved two guns from his bedroom and gave them to Bear.

16. Richards, MV1, and MV2 did additional lines of cocaine and then went into Richards' bedroom.  MV1 sat on the side of Richards' bed while MV2 and Richards had sex.  After sex with MV2, MV1 said Richards made MV2 "touch me and eat me and stuff like that and it made me very uncomfortable."  MV1 said Richards told MV2 to "sixty-nine, eat me out and like to kiss me and stuff, to finger me."  MV2 was touching MV1's vagina with her tongue and placing MV2's fingers in MV1's vagina.  Richards eventually pushed MV2 off and engaged MV1 in vaginal sex.  Richards did not ask MV1 for consent to have sex with her.  Richards also made MV1 give him oral sex that same night.

17. The following day, on or about March 1, 2023, they ordered pizza from LaRosa's. Investigators obtained an order receipt from LaRosa's dated March 1, 2023.  The receipt

listed the customer's name as Scorpio with a telephone number of 513-668-6630 and address of 1828 Sunset Avenue, Cincinnati, Ohio.[1]   The receipt had an order time of 9:14 PM. Toll records indicated that telephone number 513-668-6630 called LaRosa's located at 4008 Glenway, Avenue, Cincinnati, Ohio at 9:10 PM on March 1, 2023.  The AT&T records also indicated the phone associated with telephone number 513-668-6630 was an Apple iPhone 11 Pro Max with IMEI number of 3538901085912822 and IMSI number of 310410262344029.

18. On the same night, Richards told MV1 that if his friend "Lorenzo" wanted to have sex with her it would cost him $100.  MV1 asked Richards what if she did not want to have sex with Lorenzo.  Richards told MV1 to just do it because they needed the money.  MV1 described Lorenzo as an older male, approximately 57 years old.  Lorenzo came to Richards' apartment and asked MV1 to come to his (Lorenzo) apartment.  MV1 went with Lorenzo because she was scared not to do what Richards told her to do.  Lorenzo began taking off MV1's clothes, but she stopped him and said he would have to pay first before having sex with MV1.  Lorenzo agreed to give MV1 $30 in exchange for sex. After the sexual encounter with Lorenzo, MV1 returned to Richards' apartment. Richards was mad at MV1 because she took too long and only made $30.  Richards took the $30 and screamed at MV1.  MV1 said, "Scorpio (Richards) was making me, like, have sex with these people and get paid, and give him the money."

19. On or about March 2, 2023, Richards obtained assistance from an unknown female who went by the name "Red."  Richards commented about how MV1 could make real money and asked Red if she could help out.  MV1 said Red was a prostitute and utilized an

---

[1] Subscriber information and toll records were obtained from AT&T by administrative subpoena for telephone number 513-668-6630.

online application called "link finder or crawler" where girls advertised themselves for sex in exchange for money.  Richards wanted to post an ad online advertising MV1 and MV2 for prostitution.  Richards used an account that was associated with Red's boyfriend's daughter.  Richards used the account to post an advertisement, depicting photos of MV1 and MV2.  Red provided the account information to Richards.  MV1 remembered the account password was "starburst."  MV1 said Richards was the one who controlled everything.

20. Richards' iPhone was used to take pictures of MV1 in the shower, which showed MV1 undressed from her upper thighs to her neck, depicting MV1's breasts and vagina. Additional photos were taken of MV1 laying down on Richards' bed showing her back. MV1 believed the covers on Richards' bed were striped. None of the photos contained MV1's face. The photos were used in the ad online advertising for sex.  Photographs of MV2, which included her face, breasts, and backside were placed in an advertisement. MV1 was referred to as "Essence" in the ad.  Richards received a lot of responses from the advertisements.  MV1 said Richards had two phones, a red iPhone 7 or 8, and a red iPhone 11.[2]  MV1 said the account for the ad was on the iPhone 7 or 8.  The number on the ad would go to Richards' iPhone 11.  MV1 believed Richards' iPhone service provider was AT&T. Richards took photos of MV2 using his iPhone 11 and uploaded them to the ad.  The photos of MV2 included her face and breasts.

21. An unknown male (UM1) responded to the advertisement for MV1 saying he would pay $125 for oral sex.  Richards and MV2 drove MV1 to meet UM1 at his residence.  MV1 said she was scared.  She didn't know anything other than "there's a dude who wanted

---

[2] In a follow-up interview with investigators, MV1 said the older iPhone might have been an iPhone 8 or 9.

head and I had to do it." MV1 gave UM1 oral sex in exchange for $120. MV1 told investigators that MV2 had four dates consecutively the same day at both hotels and homes, earning $365. Richards referred to the dates as "licks." MV1 said the dates were set up by individuals contacting a telephone number on the ad which would go to Scorpio's phone.

22. On or about March 3, 2023, Lorenzo came over to Richards' apartment. Lorenzo wanted MV1 to come back over to his apartment. Richards told MV1 to go to Lorenzo's apartment and try to make some money. At Lorenzo's apartment, Lorenzo told MV1 to take off her clothes, but MV1 told Lorenzo he had to pay her first. MV1 and Lorenzo talked for approximately 45 minutes without engaging in sex. When MV1 returned to Richards' apartment without money, Richards screamed at her. Richards told MV1 to sit next to him which she did. Richards asked her why he shouldn't smack the shit out of her. MV1 responded that she did not know and stood up to walk away, at which point Richards struck MV1 on the back of the neck.

23. MV2 was interviewed by investigators on April 6, 2023. MV2 had known Richards for approximately one year. MV2 contacted Richards to collect her and MV1 from Hope Haven via Facebook Messenger. Richards' Facebook account was Scor Pio.[3] MV2 said Richards picked them (MV1 and MV2) up from Hope Haven and drove them to his apartment. MV2 said Richards' apartment was located on Sunset Avenue in the Westwood area of Cincinnati, and specifically described the location of his apartment at the bottom of the stairs next to a laundry room. MV2 showed investigators a map of the location of Richards' apartment on her phone. The location was consistent with 1828

---

[3] MV2 showed investigators her Facebook communication with Scorpio from Facebook account "Scor Pio."

Sunset Avenue. While at the apartment, Richards had MV1 take photos of MV2 undressed.  Scorpio placed the photographs in an advertisement and posted the ad on a website named "List Crawler."  MV2 said List Crawler is used for prostitution.  Richards used his cell phone to create the ad.  MV2 said her name on the ad was "Carmel Candy" and MV1's name was "Essence."

24. MV2 located and identified the ad that Richards created on List Crawler and showed it to investigators.  The ad stated, "Pussy Wet & Head [fire emoji] You Bout To Love It Here One Or Two Girl Special."  The ad listed a telephone number of 513-725-9361 to contact to set up an appointment.  The females pictured in the ad were identified as Essence and Carmel Candy.  The ad included three photos and one video of MV2. Photos in the ad depicted MV2's face, breasts, and backside.  The ad also included three photos of MV1.  Two of the photos depicted MV1 laying on a red, white, and dark colored striped bed comforter.  One of the photos depicted MV1 nude laying supine with her legs spread fully exposing her vagina and breasts, the other photo depicted MV1 laying prone with her right hip and knee flexed wearing a black top and black underwear.  The third photo depicted MV1 from mid-thigh level to just below her neck, in a shower covered in what appeared to be soap, cupping her breasts.  MV2 identified the telephone number on the ad, 513-725-9361, was the number Richards used to set up the dates.

25. In April 2023, Investigators conducted a follow up interview with MV1.  MV1 was shown a BMV photo of Richards.  MV1 identified the photo of Richards as the individual she knew to be Scorpio.  Investigators showed MV1 a photo of the 2009 Infiniti SUV registered to Scorpio's One Stop Shop, LLC.  MV1 identified the vehicle as Richards' vehicle and it was the same vehicle that Richards initially collected MV1 and MV2 when

they ran away from Hope Haven on February 28.  In addition, MV1 told investigators Richards drove her in the Infiniti to meet UM1 to provide UM1 oral sex in exchange for money.  Investigators showed MV1 a photograph of the apartment building located at 1828 Sunset Avenue, Cincinnati, Ohio.  MV1 identified the apartment building as the residence of Richards.  MV1 was shown a print out of the ad from List Crawler identified by MV2 and referenced above.  MV1 identified herself and MV2 in the ad.  MV1 told investigators the photos were taken in Richards' apartment located at 1828 Sunset Avenue.  MV1 told investigators the photos of her laying on a bed were Richards' bed in his apartment.  MV1 identified the blanket in the photograph as the blanket that was on Richards' bed.  MV1 told investigators that MV2 took the photo of her (MV1) in the shower at Richards' direction.  Richards took the photos of MV1 laying on his bed, including the photo of MV1 laying nude in a supine position exposing her vagina and breasts.  MV1 said all the photo of her were taken with Richards' iPhone.

26. Investigators identified the telephone number used on the ad as a TextMe number.  Basic user information obtained from TextMe, Inc. for telephone number 513-725-9361 did not identify Richards as the subscriber.  Based upon my training and experience, I know that individuals engaged in illegal activity often utilize fictitious or misleading subscriber information to conceal their identity.  However, the subscriber information identified that telephone number 513-725-9361 was utilized by an iPhone 11 Pro Max, the same phone associated with Richards' AT&T number found on the LaRosa's receipt.  In addition, Richards' AT&T number had two inbound calls to the TextMe number, one on February 28, 2023 at 10:49 pm and the other on March 1, 2023 at 2:19 am.  The communication

activity on the TextMe number is consistent with the time frame in which Richards trafficked MV1 and MV2.

27. The last login to the TextMe account associated with telephone number 513-725-9361 was on April 6, 2023 from IP address 2603:6010:b600:918f:3008:848c:6e27:c8bc.  On April 24, 2023, in response to an administrative subpoena, Charter Communications advised the above referenced IP address was assigned to the account of Kelly Richards at 1828 Sunset Avenue, apartment 26C, Cincinnati, Ohio, telephone number 513-668-6630.

28. MV2 told investigators that Richards sells fentanyl, cocaine, and marijuana.  Richards gave cocaine to MV2.  MV2 said Richards hid his drugs in a drawer underneath a fish tank.  MV2 also saw guns at Richards' apartment.

29. MV2 told investigators that Richards took her to a hotel MV2 referred to as the "Budget" where he had arranged for males to come to the hotel and engage in sex with MV2 in exchange for money. MV2 did not remember the name of the hotel, but remembered there was another hotel right next to it.  MV2 believed the hotel was close to a White Castle restaurant.   MV2 said they made her lay down and did things to her and she had to give the money to Richards. MV2 also told investigators Richards would take her to houses.  She would go into the houses and they would do what they wanted to her, after which she would go back to Richards' car and he would take the money.  When asked what they wanted to do to her, MV2 said they "just wanted to fuck."  Richards had another person pay for the hotel rooms.

30. MV2 showed investigators text communication she had with Richards over Facebook Messenger.  On March 18, 2023, Richards sent the following message to MV2, "Sup man you know hella people keep calling for you."  MV2 said Richards was referencing

individuals calling the number on the ad for dates. On March 20, 2023, Richards sent the following message to MV2: "I'm waiting to grab this room" and "I'm calling around now." MV2 said Richards was talking about a hotel. MV2 asked where he was at and Richards responded, "Sharonville."[4] Later in the same conversation, Richards sent the following message to MV2, "Waiting to see if somebody show up." MV2 told investigators that Richards was referring to someone from the ad. MV2 responded, "ok hit me up ok?" then Richards text, "Not long."

31. Based upon the information provided by MV1 and MV2, and my training and experience, and through conversations with other experienced investigators, it is believed Richards utilized MV1 and MV2 for the purposes of sex trafficking.

## **CONCLUSION**

32. I submit that this affidavit supports probable cause for a search warrant authorizing the search of the **TARGET ACCOUNT** described in Attachment A for information described in Attachment B. I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.

Respectfully submitted,

*Nathan Holbrook*

NATHAN HOLBROOK
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on May 5th , 2023 by reliable electronic means, specifically, FaceTime video conference.

*Stephanie K. Bowman*

HONORABLE STEPHANIE K. BOWMAN
UNITED STATES MAGISTRATE JUDGE

---

[4] It is known to investigators that Sharonville is an area that contains hotels utilized for prostitution.

**Attachment A**

This warrant applies to information associated with the TextMe account user ID of 236977084, user name "744626cggt0924" and telephone number (513) 725-9361 **(TARGETACCOUNT)** that are stored at premises controlled by TextMe Inc., an electronic communications service provider headquartered at 275 Post Street, Suite 500, San Francisco, CA 94108.

**Attachment B**

I.      **Information to be disclosed by TextMe, Inc.**

To the extent that the information described in Attachment A is within the possession, custody, or control of TextMe, Inc. including any messages records, files, logs, or information that have been deleted but are still available to TextMe, Inc., or have been preserved pursuant to a request made under Title 18 U.S.C. § 2703 (f), TextMe, Inc. is required to disclose the following information to the government for the account listed in Attachment A:

    a.    All contact and personal identifying information for TextMe account user ID of 236977084, user name "744626cggt0924" and telephone number (513) 725-9361 **(TARGET ACCOUNT)** to include but not limited to full name, user identification number, date of birth, gender, contact e-mail, addresses, physical address (including city, state and zip code), telephone numbers, screen names, websites, and other personal identifiers;

    b.    All activity logs for the TARGET ACCOUNT;

    c.    ALL content of text messages sent and received;

    d.    All photos and videos uploaded by the TARGET ACCOUNT and all photos and videos uploaded by any users to the TARGET ACCOUNT, to include metadata associated with those photos and videos;

    e.    All records or other information regarding the identification of the devices and internet browsers associated with, or used in connection with, the TARGET ACCOUNT, including the hardware model, operating system version, unique device identifiers, mobile network information, and user agent string;

    f.    All information generated or received by the TARGET ACCOUNT, including any postings, status updates, comments, networks or groups of which the user is a member, and information about the user's access and use of the TextMe application;

g. All other records and contents of communications and messages made or received by the users, including all public chat messages, private chat messages, group chat messages, chat history, video and voice calling history, and contact lists;

h. All IP logs, including all records of the IP addresses that logged into the TARGET ACCOUNT;

i. All records of searches performed by the TARGET ACCOUNT;

j. The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

k. All records pertaining to communications between the TARGET ACCOUNT and any other person regarding the ability to use and access TextMe, including contacts with TextMe, Inc. support services and records of actions taken;

l. Any original metadata or file information still maintained by TextMe, Inc. associated with media content sent to or from the user's TextMe account;

m. Any cookies, web beacons, advertising IDs, and push tokens, associated with the TARGET ACCOUNT; and

n. The data listed above in paragraphs A through M shall be produced by TextMe, Inc. regardless of where it may be stored.

II. **Information to be seized by the government**

a. All information described above in Section I that constitutes fruits, evidence, and instrumentalities of violations of 18 U.S.C. §§ 1591 & 1594(Sex Trafficking of Children to include attempting and conspiring) & 18 U.S.C. § 2422(b) (Coercion & Enticement for Illegal Sexual Activity) including the following: all files, documents, communications, images, videos, contacts, metadata, and logs associated with the TARGET ACCOUNT related to minors engaging in prostitution, sexual activity or sexually explicit conduct, along with any evidence that would tend to show the true identities of the persons committing these offenses.

b. All activity and IP logs, including all records of the IP addresses that logged into the account;

c. All account information, including all registration, identity and contact information, including full name, e-mail address, physical address (including city, state, and zip code), date of birth, gender, hometown, occupation, and other personal identifiers:

d. The length of service (including start date), the types of service utilized by the user, and the means and source of any payments associated with the service (including any credit card or bank account number);

e. All privacy settings and other account settings;

f. All registered devices and accompanying serial numbers and other identifying numbers to include dates or activation, registration, deactivation;

g. All records pertaining to communications between TextMe, Inc. and any person regarding the user or the user's TextMe account, including contacts with support services and records of actions taken;

h. All records that may identify co-conspirators, aiders, abettors, or any other individuals involved in the crime under investigation, including records that may help reveal their true identity and whereabouts; and

i. All records that may identify any victims or individuals who sought prostitution in the crimes under investigation.